Mr. Chief Justice Sharkey
delivered the opinion of the court.
Noland brought this action on four promissory notes made by Joseph Galtney in his lifetime, against the plaintiffs in error as administrators. On the trial, they offered to introduce a title-bond for a section of land which had been given by Noland to Galtney, and stated at the same time that they would endeavor to show from the bond, and by parol evidence, that the notes were given for land lying in Octilbeha comity, mentioned in the bond — that Galtney died on the 3d of January, 1842, and had not, during his lifetime, received a conveyance; that in March or April, 1842, Noland sent to Galtney’s administrators a deed for the land, which bears date some time prior to Galtney’s *301 death, which they also offered to read, hut this evidence was rejected.
It is insisted’ that the evidence should have been admitted, because the covenants of the parties are mutual and dependent, and that Noland cannot recover until he makes a good title to the land, which, it is said, he has not done, inasmuch as the deed is void for ambiguity in the description of the land. There is no objection arising out of any imperfection in Noland’s title. In principle, there is no difference between this case and . the cases of Hageman v. Sharkey, 1 How. 277, and Gibson v. Newman, Ibid. 349; in both of which the covenants, in contracts similar to this, were held to be independent; that the vendor was entitled to recover the purchase-money, although no title had been made. Noland agreed to convey, but when the title was to have been made does not appear. On the strength of that agreement, Galtney executed the notes, payable annually, relying on the security'afforded him by the title-bond. By giving the notes payable in this way, without making the payments depend upon the execution of the conveyance, he manifested an intention to part with his money at all events, not upon a contingency only; and having omitted to protect himself by the contract, his administrators cannot say that Noland is bound to make title before he can sue for the purchase-money. The intention of the contracting parties is apparent, and must prevail.
But it is said, even if the covenants are independent, the bond is void for ambiguity, and is therefore insufficient as a consideration to make the notes valid. The bond describes the land as six hundred and forty acres, “lying and being in Octilb.eha county, on a branch called Cypress Creek. The lots are described as follows, to wit: three quarter sections in section seven; in section five, one-eighth; in section four, one-eighth.” The defect relied on is, that the township and range in which these sections are situated, are omitted in the description; that sections having these same numbers are to be found in every township, and that each county must contain a number of townships. This may be true, and unaided by other descriptive calls, the *302 description would be uncertain. But because there are other sections in the same county designated by the same numbers, it does not follow that those other sections lie upon Cypress Creek. That creek is the general or locative call; the sections the particular call. If it should turn out that there are other sections of the same numbers on that creek, then there is an ambiguity, but it is latent, arising not from the description in the bond, but from a collateral matter, or extrinsic evidence, and may be explained by parol .testimony, on the principle that when there are two or more persons or things which answer the description in the instrument, parol testimony is admissible to show which was intended. Sugden on Vendors, 113; 1 Phil. Ev. 531, and note 939; Jackson v. Goss, 13 Johns. R. 518. If there be a defect in the description given by the bond, it is in the omission of the particular subdivisions of sections contracted to be sold. By law, sections are subdivided into sixteenths, eighths, quarters and halves; the description is of a certain portion of these sections, without stating which of the subdivisions was intended. But this apparent uncertainty, like the uncertainty in the sections, is removed by locating the parts of sections on Cypress Creek.
But it was insisted that as Noland had undertaken to perform, by making a deed before the suit was brought, he thereby made the covenants dependent; and if the deed be defective, he cannot recover. No authority was referred to in support of this position, and it seems to be opposed by the contract. Noland gave a general obligation to make a complete title, without appointing any time at which it was to be executed. He had a right to retain the title until the purchase-money was paid, or he was at liberty to make it sooner. He chose to make title before he was bound to have done so ; but we cannot see how this could change the nature of defendant’s promise to pay. By paying, the security of the bond still exists, and if the title made by Noland be defective, he may be compelled to make a good one. He did not discharge his own obligation by making a defective title; nor did he defeat his right by doing that improperly which he was not bound to do.
*303 But the objections raised to the title made by Noland are without foundation. The objection is, that it is void because of a patent ambiguity in the description of the land. The description is, “ all that tract of land¡ situate, lying, and being in the county of Qctilbeha, state aforesaid, and more distinctly known as the east half and the southwest quarter of section No. 7 j and the east half of the southeast quarter of section No. 6 ; and the west half of t-he southwest quarter of section No. 5, all of township seventeen north, of range thirteen east, in the Columbus District.” No objection whatever is perceived to this description. It was said in argument that the range was omitted, but this seems to have been a mistake. There is a discrepancy between the description given in the bond, and that given in the deed in this, the bond calls for an eighth in section four, and the deed for an eighth in section six. If the deed be wrong, it may be reformed to correspond with the bond. The error, however, is most probably in the bond. No objection was raised to the covenants in the deed, and we must therefore suppose, that in this respect it is satisfactory. If it has been received by the heirs as a good deed, it amounts to a compliance with the bond. The only objection that could be urged to it is, that it only expresses on its face to warrant as against the grantor and .his heirs. It however contains the words grant, bargain, sell, which are declared to be equivalent to a warranty of an indefeasible estate in fee-simple, and the seisin of the grantor. Whether the subsequent express warranty, as against the grantor and his heirs, limits this statutory warranty or not, we give no opinion. Even if it should do so. the title may still be complete within the language of the bond. The heirs are now the proper parties to object to it — they have not done so, and it may well be doubted whether the administrators can bring their title in question, arid whether we could so adjudicate on it as to declare it inoperative for the purposes of this defence, as the heirs are not parties to the suit. If the title be complete, as it may be, even without general warranty, then Noland has performed his contract. There are cases in which a performance in effect, though not in manner, will be sufficient. Worsley v. Wood, 6 *304 T. R. 722; Co. Lit. 207 a. If Noland derived his title directly from the United States, it is likely to be as good without a general warranty as with it, as the chances of an outstanding title are so remote as to make a general warranty very much a matter of form. A warranty does not pass the title; it only secures an indemnity if there be incumbrances.
The judgment must be affirmed.